Next case is Ekinciler Demir v. United States, number 2008-1371. Ekinciler Demir v. United States, number 2008-1371. Good morning, Your Honors. May it please the Court, my name is Myles Getland of Aaron Fox, representing plaintiffs' appellants Ekinciler Demir Celik and Ekinciler Tishere, a Turkish rebar producer and an exporter, each a respondent in the administrative review that is subject to this appeal. What is the proper pronunciation? Ekinciler Ekinciler Ekinciler Thank you. I won't repeat both of the company names, I'll just stick with Ekinciler, if that is okay. This appeal concerns Commerce's calculation of Ekinciler's cost of production in the administrative review. Specifically, Commerce disregarded Ekinciler's audited records and assumed that certain capitalized financial expenses incurred prior to the period of review were a depreciable item. As a result, Commerce imputed a huge amount of depreciation cost and added this to Ekinciler's cost of production in the administrative review. As a result, Ekinciler's cost of production went up by a significant amount, and this adjustment single-handedly generated an anti-dumping margin for Ekinciler. Commerce's decision to impute this depreciation cost was not based on substantial evidence, and it was otherwise not in accordance with law. Where was Commerce going wrong? What path did they take that was the wrong path? Can you explain that? They did not... Depreciation is accepted under generally accepted accounting principles, even in Turkey, I presume. That's right. Depreciation of certain assets is an accepted practice. In this case, however, and in any case, really, it is incumbent upon the Department of Commerce to know what these assets are before they depreciate them. They must relate to the production and sale of the subject merchandise in order for them to be captured in the cost of production. Here, Commerce did not know what this asset represented. This is a central question in the case. In order for an asset to be depreciable, you need to know what that asset is. In this case, the asset at issue are these capitalized financial expenses. Are you claiming that there was a misclassification of the asset? I didn't read your papers as proposing that. Well, the record on that particular issue, that specific issue, is limited. But there is some inconsistency in the record that suggests that the item might have been misclassified. It was on the asset list. It was on the plant machinery and equipment category. It was a capitalized financial expense. That's right. And with those three things put together and the question, supplemental question, posed by Commerce requesting an explanation between the discrepancy between the fixed asset depreciation that was taken and the actual value of the fixed assets, wasn't that the opportunity for McKinseller to expand on whatever it wanted to say about why this was not a capitalized financial expense that should be depreciated in relation to the company's cost of rebar manufacturing? In hindsight, it might have been an opportunity to present yet additional information concerning the nature of the capitalized financial expenses. But in context, the question that you referred to was a general question. It was not targeted to the capitalized financial expenses. So what McKinseller did was identify the differences, identified by line, basically, the different categories of assets that were not depreciated. And in that response, the response was as detailed with respect to the capitalized financial expenses as it was detailed for the other categories that were not depreciated. And in this case, McKinseller indicated that the capitalized financial expenses did not relate or were not incurred with respect to the acquisition or construction of fixed assets, which is understood under general accounting principles that those are the only types of financial expenses that compel depreciation. If they had been depreciated in accordance with fundamental accounting principles, they would have been depreciated at least in part over the period of review. Correct. Well, but we submit that depreciation of this particular asset category would have been inappropriate and inconsistent contrary to the general accounting principles. That was the purpose for indicating to Commerce that these did not relate to the construction or acquisition of an asset. I mean, this asset category, you're correct, the asset was recorded in a plant machinery and equipment account. All we know is that it was capitalized, these expenses were capitalized, and the account name, basically. And that by itself, we submit, would not be substantial evidence of the depreciability of this item. But with respect to the other items on the record, it further undermines Commerce's ability to say that there was substantial evidence going to the nature of this expense. And that is, these are, if you step back, actually, this is a huge amount of money. The capitalized financial expense is tremendous. They are financial expenses. It does not necessarily relate to any particular item in that asset schedule. And when you look at the amount of that financial expense, it makes it, it's evident in the asset schedule that there are no other assets, no fixed assets with which those expenses could have been incurred in purchasing or acquiring. So there's no relationship. But why would you put it then under the PME account? Well, I wish that question, in our view, Your Honor, Commerce has an obligation to ask questions about a category with which it is seeking to deviate from Akinzler's books and records. Remember, the statute requires that Commerce calculate Akinzler's cost of production based on its audited books and records. Akinzler submitted information on its cost, including depreciation, including its treatment of capitalized financial expenses, based on those books and records. Akinzler did not deviate in any way from that. Now, if Commerce, once it was apprised of a possible issue concerning the capitalized financial expenses, and by the way, this was raised after the administrative record was closed, then Commerce was obligated to at least provide Akinzler an opportunity to detail the nature of these expenses. This issue was not an issue during the time that the administrative record was open. And once it became an issue, Akinzler, on its own, went to Commerce and tried to explain what these capitalized financial expenses were. Instead, Commerce shut the door on Akinzler, which is contrary to how they treated petitioners, the domestic producers in this case, in which they reopened the record for further inquiry on depreciation generally, not in regards to the capitalized financial expenses. Do you disagree that capitalized financial expenses have to either be amortized or expensed? As a general matter, I do not disagree with that. I believe that there are only certain financial expenses that can be capitalized and depreciated. And these were not such financial expenses. And, in fact, Akinzler had not either amortized or expensed this capitalized financial expense at that point. They had not expensed it. They capitalized it and treated it as an asset and did not amortize or depreciate that. Doesn't that greatly skew their cost of production? No, it does not. Because what we're talking about is the cost of production for this period over the year, this period of time, 2004-2005. Now, we submit, based on the record evidence, limited as it is, but based on the record evidence, that these expenses should not have been depreciated over the course of the period of review. The fact that these expenses may have been— Excuse me, counsel. I don't want to interrupt, but you're saying over the period of review should have been depreciated over some other period? It should not have been depreciated at all because of the nature of these financial expenses, that they did not relate to the construction or acquisition of fixed assets. And that is established not just by Akinzler's statement, which is factual information in the record responding fully to Congress's questions, but also by virtue of the assets schedule, which was submitted six—let me emphasize this. This was submitted six months prior to Commerce issuing the preliminary results. Commerce issued—I'm sorry, Akinzler submitted a fixed assets schedule, which identified these capitalized financial expenses, indicated what account they were in, and indicated that there was no depreciation taken on them. There was no question by Commerce, no comment by petitioners on this information for six months when it became apparent after the administrative record was closed that it's possible that these capitalized financial expenses would raise an issue. Akinzler on its own sought to submit information clarifying the nature of these financial expenses and why they shouldn't be depreciated, why expense should not have been imputed to this period of review. Commerce shut the door on Akinzler. Why were they then listed as an asset? That was likely information that Commerce sought to submit in— if I give you the explanation, it would not be based on the record evidence, so I'm limited there. But that is—what is on the record is the fact that Akinzler attempted to submit information regarding these capitalized financial expenses, and it was rejected. We can assume—I would like—we assume that that information would have detailed the nature of the expenses and why they shouldn't have been depreciated, and why they were capitalized, incorrectly or not. Can we go back to your period of—I'm sorry. Go ahead. Your contention that this capitalized financial expense is not depreciable because it relates to prior period costs. Why— Actually, that's not—can I interrupt? That's not what you're trying to do? It's not. Because you put all depreciations on that, right? Well, it is Commerce's obligation to calculate costs of production with respect to a certain period of time, in this case 2004, 2005. And so if you have depreciation that takes place in accordance with standards— Sure. —some of which occurs in the period of review, then that's appropriate for Commerce's— Absolutely. And there was plenty of that depreciation expense with respect to fixed assets that go to the production and sale of rebar, Turkish rebar in this case, that was appropriately included in Akinzler's cost of production. Where we differ with Commerce is that the nature of these financial expenses— Look, Commerce did not relate to the production of rebar. Commerce cannot answer whether these expenses related to interest on loans. I mean, we're talking about financial expenses. Was it interest on loans? But whose burden is it to demonstrate that? And I don't find in the record an answer to my question about what these capitalized financial expenses were such that they claim that Commerce acted improperly in considering them can be measured. Akinzler is required to respond to Commerce's questions, and there are a lot of them. It's a lengthy questionnaire that Commerce issues at the beginning of an administrative review. It includes requests for information on cost of production, detailed information, and as a general matter, and consistent with the statute, which is 19 U.S.C. 1677 B.F.1a, basically the cost of production need to be consistent with a respondent's books and records so long as they're maintained or kept in accordance with GAAP. And in this case, Akinzler did that, including its treatment of capitalized financial expenses. The absence of depreciation was consistent with their books and records, which were audited, and consistent with Turkish tax law, which Commerce acknowledged was consistent with GAAP. And so there was no reason for Akinzler at that point to highlight this specific expense item or this specific account or these financial expenses. There was no reason because they did not deviate from their audited books and records in submitting that information. If it was, if Commerce, if Akinzler submitted information on the capitalized financial expenses that diverged from its books and records, then Akinzler would have had an obligation to highlight that and say, we're treating this differently than our books and records. Instead, we gave Commerce all of the information Akinzler did with respect to these expenses six months prior to Commerce issuing the preliminary results. No comment or question by either Commerce or the domestic industry. And then once, and so it is at that point their obligation to solicit additional detail about a particular item. Mr. Gesson, you're on to your rebuttal time. You want to save some of it? I would like to, please. Two minutes? Two minutes would be great. Thank you, Your Honor. Thank you. Mr. Schroeder? Good morning. May it please the Court. In this case, Akinzler listed under plant machinery and equipment something called capitalized financial expenses relating to a specific modernization asset. And what they claimed was for their own internal reasons, they never had taken depreciation on an account. On the entire PME account or just on the financial portion of the PME account? On that particular portion of the account, which was relatively large. In comparison to the balance of the PME account? Yes. And the other aspects they had depreciated? Well, they had depreciated much of it. In the fourth supplemental questionnaire, Commerce pointed out to Akinzler that there's this apparent discrepancy between the large value of the assets and the small amount of depreciation. And that discrepancy was mainly due to this one asset. So it's certainly Akinzler at that point had all the information that it needed to understand that this was an issue. But, Mr. Schroeder, one of the problems that I'm having with the case is the fact that the Commerce Department asked a number of supplemental questions. I don't know the exact number, but five or six requests for additional information. They finally asked the right question regarding the balance of the PME account, and they did not allow Akinzler to provide the information that they had submitted or requested. Well, they actually, in the fourth supplemental questionnaire, and this was before the final, obviously, they said, explain why in the 2004 fiscal year Akinzler only recorded depreciation expenses of X when the net total tangible fixed assets reported in the 2000 fiscal year balance sheet were Y. I can't reveal the exact numbers. And Akinzler actually highlighted on page 1161 of the record this asset and said, this asset in the group is an account in which certain expenses were capitalized, and they weren't related to the construction of assets and no depreciation had been taken on that account. So they knew that these particular assets weren't issued. In fact, provided information that expressly addressed those assets. And not only that, but... You're saying if they had come forward with the proper identification, then it would still be the same? Well, they actually did. They provided, in response to this fourth supplemental questionnaire, they provided for the first time their fixed assets schedule that actually listed these assets, disclosed the amount, showed they were in plant equipment and machinery, and on that basis commerce imputed depreciation consistent with generally accepted accounting practices. So Akinzler had all the information it needed to understand that this was an issue. When you say commerce imputed depreciation in accordance with generally accepted accounting principles, I guess, am I wrong? I read the opinion as saying in the terms of the two prongs with regard to costs that commerce was not alleging that these records were not kept in accordance with generally accepted accounting principles of the exporting country, but rather that this didn't reasonably reflect the costs associated with the production and sale of the merchandise. I understood commerce as focusing on the second, not the first of those two. Is that right? Absolutely. And I think that Akinzler somewhat mixes up the issue of when books, the factual part of Akinzler's books, which are these are the facts, that's what our books reflect, and commerce doesn't object to that, and this is how we treat those facts. And commerce doesn't object to the fact that under Turkish law it might have been okay for them to reflect it this way in their books. Correct. They don't object to any of that. That's Turkish tax law, but there's a big distinction between what an asset is and how it's treated. For example, if there was an asset in someone's books, a five-story office building, and that was reflected in the books, that could be accurate, even though Turkish tax law might say you can treat an office building as land. Commerce can accept the fact that it's an office building without accepting the treatment of that asset as land, and that's really what this is about. Commerce accepted the facts but had a different interpretation. They said it didn't reasonably reflect the cost of the merchandise. Yes, and the statute expressly authorizes commerce to take that approach, and that's exactly what commerce did here. I couldn't find in the record the essence of a proffer, of what a counselor would have submitted if it had been permitted to do so. It has the burden of producing an adequate record, creating an adequate record. Why is this record so silent on what this capitalized financial expense was or went to or wasn't applicable? Is there some reason why the proffer isn't made evident? This might be a question perhaps better directed to Mr. Gitlin, but here you are. Yes, well, the consular has these records under its control, and it shows how much it wanted to give commerce, and when it asked questions, it sort of limited its explanation, but there is something, I believe it's on page 720 of the record, in which commerce rejected that document that the consular attempted to submit. I believe it's 720, and it does describe what it is, and it says the Department of Commerce has determined that the information contained in your submission represents a new and untimely filed written argument. So that's the part of the record that shows what it is. Which doesn't give too much enlightenment on the substance of what has been argued as somehow being a capitalized financial expense that, while perhaps depreciable, its depreciation shouldn't be attributed to this period of review. Well, commerce used their own consular's own books and records to determine how much to depreciate during the period of review, and that has not been challenged here. Commerce applied generally accepted accounting practices in doing that, and of course, by definition, anything that gets depreciated is generally from expenses incurred during an earlier period of time. That's what depreciation is. But wasn't there an adverse inference that was made by commerce in this situation? No, actually... The lack of information? Commerce chose not to apply adverse facts available or facts available with an adverse inference. They actually declined to do that because they said you've created a sufficient record for us to reach a reasonable conclusion that this needs to be depreciated and we don't find any deficiency in your record. And on page 33 of the Kinchler's brief, they say we made no error in our records. So commerce and Kinchler, in fact, are in agreement that their records were adequate, or at least that they were not in error. But without an explanation as to what the PME account really contained. Could that be considered to be an adverse inference if you don't ask for an explanation on the financial aspects of the PME account? No, not in this case, Your Honor. These were modernization of steelwork assets that were listed specifically under capitalized financial expenses as capital financial expenses related to the modernization of steelworks under plant machinery and equipment. By definition, those types of assets under generally accepted accounting practices are depreciable. And that's exactly what Commerce did here. The court below correctly found that the information that Kinchler provided was substantial evidence that supported Commerce's decision and also found that Kinchler did not provide any sufficient evidence to rebut that and therefore Commerce correctly depreciated these assets and the court below correctly upheld Commerce's treatment. What would be wrong in allowing them to give you additional information and explaining the actual depreciation of those particular capital accounts? Your Honor, Kinchler had repeated opportunities to do this and the courts upheld that Commerce has the authority to enforce its own regulations and time limitations and here Kinchler had the ability to provide all the information it needed to provide and Commerce needs to be able to enforce its timelines so that at some point it can close out these investigations and administrative reviews. Well, provided it's new information. If it's new information, then you can say you had your opportunity. But if they come in and they say, well, you are misclassifying that and it should not be depreciated on that basis because it's a capital account, that's not new information. That's an explanation of what that PME account contains, isn't it? Well, it's a new argument, but at some point... It's a new argument, but not necessarily a new argument if it's an explanation as to what's in there. In this case, though, it wasn't... They actually had a chance because the interveners in their principal administrative brief actually directly brought this issue up and Kinchler directly answered it and at that point chose what to include in his answer. So they actually did have an opportunity and chose to give a very brief answer and then a month later, after everything had been closed, then they decided, okay, we want to submit more argument. And it's really just argument. And Commerce's decision is supported by the facts, by generally accepted accounting principles and the law, and just more argument on it isn't going to really change the result. But I didn't find in the record that Commerce had ever set deadlines, either with the preliminary review or the Federal Register or the final results publication. And then after it had some briefing in which the response was received from both the coalition and Kinchler, then there was no statement that I can find in the record about what any new deadlines would be. Obviously, these briefing schedules had been modified. The coalition requested and received a two-week extension. That would push the deadlines forward to July 13th and 18th. And what I don't quite understand is where the untimeliness finding came from. Yes. I don't know exactly where in the record that is either, Your Honor. However, my understanding is that each side got to file a principle brief and a rebuttal brief. And so this was sort of an attempt sort of as somebody trying to submit a surreply after there's been a principle brief, a response, and a reply. And then Kinchler wants to come along and submit yet more argument. And at that point Commerce, correctly and within its discretion, decided not to accept additional argument because it needs to be able to complete these administrative proceedings. Otherwise, a party could continue to submit information. Isn't that why courts set deadlines? Pardon me? Isn't that why agencies and courts set deadlines? Yes, but I think it's understood that, for example, in a court where the appellant or the plaintiff files a brief and a summary judgment motion, the other side responds, and then the movement files a reply brief, a month later they can't then come forward and just file a surreply without leave of the court. And I think it's the same type of activity here. I see I'm running past my time, so we would just ask that the decision be lawfully affirmed. Thank you, Mr. Schroeder. Mr. Gaffney, we have two minutes left. Thank you, Your Honor. First, I'd like to correct Government Counsel. The first time that Kinchler submitted a fixed asset schedule identifying these capitalized financial expenses, identifying the account they were in, and identifying the fact that they did not depreciate these financial expenses was in November 2005, six months prior to issuing the preliminary results. And after that submission, Commerce and the domestic industry failed to comment on it or further question that submission. I guess I'm not following you exactly. I mean, I understand what you're saying, but I understood the government to argue that in the fourth supplemental request for information, you were put on notice that the government was, Commerce was, concerned about why there was a tiny little bit of depreciation but a really large quantity of assets listed under PME, and that you all responded specifically pointing to the capitalized financial assets. Why then? Why isn't that your opportunity and your obligation if you want to submit at that point? You're on notice. Why are you not on notice then? Context is everything. That supplemental questionnaire issued by Commerce, after the record had closed, came in response to a domestic industry request that Commerce reopened the record. That request had absolutely nothing. But they reopened the record to let you file a response. Of course they did. Of course they did. But the focus of that questionnaire, and it was in direct response to petitioner's comments filed in May 2006, which was there was an issue regarding revalued assets in this case. Can you get some more information from all of the respondents regarding revalued assets? And that question was issued in that context. These capitalized financial expenses were not revalued assets. The question which you're referring to, Judge Moore, was a general question in which Akinzler identified a number of assets in which there was no depreciation taken, which accounts for this difference. But the fact of the matter is the rest of the questionnaire was dedicated to revalued assets. Akinzler was not on notice that the capitalized financial expenses specifically were an issue. And, Judge Moore, you asked government's counsel a question about the reasonably reflecting the cost. The government has concluded that these capitalized financial expenses do not, or the absence of depreciation on these financial expenses, do not reasonably reflect cost. We submit that they cannot conclude or make that assumption without knowing what these financial expenses relate to. Well, can't they rely on your putting them in the PME category? Do they have to know, whose obligation is it to make clear what these expenses are? I don't think it's the government's. You chose where to classify those. I think this goes to one of the errors of the lower court, and I think the government follows that. The lower court suggested that Akinzler needed to conclusively present evidence that these were not depreciable assets. That's not the standard here. The standard is that commerce needs substantial evidence to conclude that these were depreciable items. You cannot conclude whether financial expenses are depreciable unless you know what they relate to. We know what account they were in, but we know that they weren't depreciated. We know that these are financial expenses that were not incurred in connection with constructing or acquiring fixed assets. We know that, not just by Akinzler's statements, but we know that based on the fixed asset schedule, which has no other fixed assets that could reasonably relate to these financial expenses. We know that. Were you given an opportunity to reply after the supplemental questionnaire was reopened by commerce? The only other submissions that were allowed by commerce after the fourth supplemental questionnaire was issued were the case briefs and rebuttal briefs in which, again, we indicated in the rebuttal brief that these capitalized financial expenses didn't relate to construction or acquisition of fixed assets. But really, it was petitioned. Was that considered to be argument, or was there substantial evidence to support the position that you were taking at that point? Was there any evidence? The briefs are supposed to be limited to argument at that point. But this court and the lower court, and there are other cases in which commerce at the administrative level accepts new information or argument, especially if that information and argument relates to corroborating previously submitted information. Here, and I'd like to step back to conclude in just a moment, the Commerce Department calculated a margin solely on the basis of this additional depreciation expense. And this was, for the first time, they did this in the final results. In the preliminary results, commerce calculated costs based on a Kinsler's submitted records. In the final results, they created a margin by adding this depreciation expense. We think it is completely unreasonable for commerce to make such a huge, significant adjustment without ever asking a single question of a Kinsler regarding these capitalized financial expenses. And when a Kinsler on its own sought to submit information clarifying the nature of these financial expenses to show that they should not be depreciated, commerce shut the door, which is at odds with how they considered Petitioner's request to open the record. But I understood you to tell commerce that you didn't depreciate them for your own internal reasons, and that's a direct quote, for your own internal reasons. So you knew that it was your obligation to explain why you didn't depreciate them. How is a cursory response like that somehow going to be adequate to overcome what Congress identifies as a problem, or why should you get yet another chance to explain what you already had a chance to explain and you just said in cursory response for our own internal reasons? Well, again, that comment was included with additional argument on the nature of those financial expenses. So while that might have been an ambiguous comment in terms of internal reasons, it still followed in the same argument that these didn't relate to purchasing or acquiring fixed assets. So under generally accepted principles, these are not depreciable assets. And in order for commerce to deviate from a Kinsler's books and records, they need to know what these financial expenses are. And they could not answer that question. In spite of the fact that they were listed under the PMA account? We just know that that was an account. And again, the Kinslers sought to provide additional information, additional detail on that point, and it was rejected. Thank you, Mr. Gatlin. The case is admitted. Thank you.